# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DESHAWN COCROFT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 14 C 02445 |
| | ) | |
| RANDY PFISTER, Warden, Pontiac Correctional Center, | ) ) ) | Judge John J. Tharp, Jr. |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Deshawn Cocroft is currently in the custody of the respondent, Warden Randy Pfister, at the Pontiac Correctional Center in Pontiac, Illinois. Before the Court is Cocroft's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Also pending is Cocroft's motion for leave to make necessary discovery. For the following reasons, the Court denies Cocroft's habeas petition and the discovery motion, and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## FACTUAL BACKGROUND[1]

Cocroft was arrested and convicted for the sexual assault of an eleven-year-old girl ("SH") that took place on January 26, 2003. A grand jury charged Cocroft with four counts of predatory criminal sexual assault, three counts of criminal sexual abuse, and one count of aggravated criminal sexual abuse. Answer to Pet. for Writ of Habeas Corpus, ECF No. 18, Ex. A

---

[1] Much of the factual background is derived from Pfister's answer to Cocroft's habeas petition. The facts in that answer stem from factual findings made in the state-court proceedings against Cocroft. *See People v. Cocroft*, 2011 WL 9698901 (Ill. App. June 17, 2011). On habeas review, state court factual findings are presumed correct unless the petitioner can rebut them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Cocroft has not done so here.

at 1. The government dismissed all but two counts alleging Cocroft committed predatory sexual assault by contacting S.H's vagina with his penis and penetrating her with his finger.

Although Cocroft was known to the victim and others in the house where the crime occurred, and was reported to the police immediately, he fled from the home and was not taken into custody until May 15, 2007. *Id.* At an October 2007 pretrial hearing, at which the state requested a continuance because there was outstanding DNA evidence that needed to be analyzed, Cocroft demanded a trial by jury "today." *Id.* at 1-2. The court instructed Cocroft that decision belonged to his attorney and that discovery was not yet completed. *Id.* Cocroft asked if he could demand a speedy trial if he dismissed his attorney and proceeded pro se. The court told him that he could represent himself but warned that:

> "You have a lawyer. If you want to have another lawyer come in and file a substitution of lawyer…they can file the motion and I will consider it depending how far along we are in the case and whether or not I find at that point a dilatory tactic. But once you demand trial and represent yourself, we're going to trial. So you can't come in here, demand trial and then have a lawyer come in in a month and file an appearance and non-demand trial and then fire that lawyer and demand trial, okay?

*Id.* at 2.

Despite the court's admonishments, Cocroft fired his court-appointed counsel, elected to proceed pro se, and demanded an immediate jury trial. *Id.* The court set the case for status in two weeks. *Id.* At that status, a privately hired attorney entered an appearance on Cocroft's behalf. *Id.* The attorney withdrew Cocroft's request for a speedy trial and requested time to review discovery. *Id.* The trial court judge allowed Cocroft to withdraw his request to proceed pro se, but indicated he would not further allow him to hire and fire attorneys as a dilatory tactic. The court gave the following warning:

> All right. Here's the deal. I spent like 10 minutes last week going over this with you, all right? [Counsel's] appearance has been allowed. I have allowed him to file his appearance today. You're withdrawing your demand for trial. [Counsel] is going to look at it, talk to you and come back. You're not going to play the game. You're not going to fire the lawyer and ask time to get another lawyer.

*Id.* Cocroft then asked his newly hired attorney to disclose to him the police reports produced by the government during discovery, but private counsel declined to do so. Cocroft's counsel made the court aware of Cocroft's request at a later hearing, and the trial court explained to Cocroft that Illinois law prevented his counsel from physically tendering the police reports produced by the state to Cocroft, but reiterated that he could review those reports with counsel.

Several months later, at an August 2008 hearing, Cocroft's privately hired counsel informed the trial court that Cocroft had contacted the Illinois Attorney Registration and Disciplinary Commission (ARDC) seeking information about his professional reputation. *Id.* at 2-3. Cocroft then wrote a letter to the ARDC asking it to investigate counsel for numerous ethical violations. *Id.* Counsel stated that none of the allegations in the letter were true, but he had no problem continuing to represent the petitioner. Counsel went on to indicate that Cocroft no longer wished to stipulate to the government's DNA evidence and wanted to hire his own independent analyst. *Id.* at 3. The court said he was free to do so, but had to have the analysis complete by the set trial date as the case was nearly two years old and he would not allow further delay.

The next day the state confirmed that it was ready for trial. Cocroft then again moved to fire his counsel and again indicated he wanted to proceed pro se. The Court then told Cocroft the following:

> THE COURT: Now, you have the right to have a lawyer. You had a lawyer, okay? He's been representing you, okay? At this point

> we've gone through this on other occasions. Now it's on the eve of trial, and you're saying you don't want your lawyer and I've told you that the case is not going to be continued anymore and you knew that, right?
>
> COCROFT: Yep.
>
> THE COURT: And so you know you're going to trial today?
>
> COCROFT: Okay.

*Id.* Cocroft then requested time to review discovery materials. But the state then informed the court that, because the petitioner had refused to stipulate to DNA evidence, it had flown in two witnesses from out of state to testify that day at trial. The trial judge went on to note that he had told Cocroft the day before that if the witnesses were available, they were going to trial that day. After again warning Cocroft about the dangers of self-representation, the court granted his request to proceed pro se but declined his request for a continuance and stated the following:

> I find this whole procedure today dilatory and I went over this yesterday and told you that if the witnesses were available, we were going to trial today. And this morning you're firing your lawyer and wanting a date to go over the discovery. So I just think that it is dilatory and I told you it was going to trial today…[w]e've been through this with you a couple times…and I think it's now just a stalling tactic. The case is set for trial and [counsel] has been dismissed. You're representing yourself.

*Id.* at 4.

When the case was called for trial, Cocroft stated that he was not prepared for trial because he had inadequate time to obtain discovery, and he again asked for a continuance. When that request was denied the trial court told defendant:

> [Whenever] things didn't go your way you would say you were going to represent yourself, then you went back your lawyer. [Defense counsel] had put on the record . . . that he gone over discovery with you . . . I told you yesterday it was going to trial, so today your fired your lawyer and said you wanted a continuance. I think at this point you are following a path hoping to inject

> error and hope that the [a]ppellate [c]ourt reverses the case. So I am making it clear for the record that over the course of this case we've had you examined for fitness, they found you fit . . . [and] that is my opinion, based on observing you and the history of the case, and the conversations with your attorney on the record that this is a calculated move by you to try and delay the case. And I'm not going to allow you to do it.

*Id.* The case then went to trial, but Cocroft refused to participate.

SH testified that on January 25, 2003 she was eleven-years old and lived at 4053 West Cermak Road with her older sister Christel Catchings, Michelle Silas, and Silas' seven-year old daughter, QM. *People v. Cocroft*, 2011 WL 9698901, at *5 (Ill. App. June 17, 2011). That night Cocroft arrived at SH's home with her cousin. After SH was introduced to Cocroft, he followed her into the bathroom and exposed his penis to her and then attempted to grab her, but SH was able to escape and proceeded to a bedroom in the home. Approximately one hour later, Cocroft entered the bedroom and lay down next to S.H. After Cocroft began rubbing her legs, SH left the room and proceeded into QM's bedroom and lay in QM's bed next to her. Cocroft followed SH into QM's bed and again lay next to her. When Cocroft began to sexually assault SH, QM attempted to leave the room to notify other adults in the home. But as QM was attempting to do so, Cocroft struck her in the lip. Crystal then called out to SH and told her and Cocroft to come out of the room. The two did so, and Crystal instructed SH to go back to bed. *Id.*

About an hour later, Cocroft went into the room SH was sleeping and raped her. *Id.* at *6. SH then went into the living room and told Christel what had happened. *Id.* The police were called, but Cocroft fled. SH was then transported to Mount Sinai hospital where she was examined by a physician; he testified at trial that his examination of SH found that there was a disruption of her hymen consistent with digital and/or penile penetration and that SH had told him that her assailant had vaginally penetrated her with both his penis and finger. *Id.* DNA

5

evidence was collected from a bite mark on SH's neck. A DNA forensic analyst then testified that she had examined the sample collected at Mount Sinai with a sample provided by defendant and concluded that they came from the same DNA profile. *Id.* Cocroft refused to cross exam any witnesses and declined to put forth any defense, despite being afforded the opportunity to do so. The jury found Cocroft guilty on both counts of predatory sexual assault.

After the jury was discharged, Cocroft sought a lawyer for his sentencing hearing. At the sentencing hearing—after two further continuances—Cocroft informed the court that he had retained private counsel. Answer, ECF No. 18, Ex. A at 6. But the court contacted the attorney and discovered that the petitioner had not in fact retained that attorney's services. *Id.* When Cocroft was informed by the court that he was not represented, the court asked whether he wanted a continuance to prepare a post-trial motion. Cocroft stated, "Whatever you're fixing to do today, go ahead and do it." *Id.* The court stated, for the record, that petitioner had voluntarily fired his public and private counsel, elected to proceed pro se, and never asked the court to appoint another lawyer. Cocroft was then sentenced to consecutive sentences of twenty-five and twenty years.

## PROCEDURAL HISTORY

Cocroft then appealed his conviction. Cocroft's appointed appellate counsel raised four claims: (1) the state failed to prove him guilty beyond a reasonable doubt on Count IV, which alleged that Cocroft had penetrated SH with his finger; (2) under Illinois common law, the trial court should have conducted an inquiry into petitioner's pretrial allegation of counsel's ineffectiveness; (3) the trial court abused its discretion in denying petitioner a continuance after he elected to represent himself on the morning of trial; and (4) the trial court violated Cocroft's right to counsel by failing to appoint him an attorney for post-trial proceedings and sentencing.

The appellate court rejected all of these arguments on June 17, 2011. In response to the last claim, the appellate court found that the trial court "granted [Cocroft] numerous continuances to retain counsel and prepare post-trial motions." *Id.* at 9. It also gave him a two-week extension to file a motion for a new trial, and offered him another continuance to prepare a post-trial motion prior to sentencing. But instead petitioner waived his right to counsel by responding to the court's offerings with "[w]hatever you're fixing to do today, go ahead and do it." *Id.* Cocroft never retained counsel to file a petition for leave to appeal ("PLA") to the Illinois Supreme Court, and did not file a PLA.

On December 15, 2011 Cocroft filed a pro se post-conviction petition alleging: (1) the trial court violated petitioner's right to hire counsel of his choice; (2) the state failed to disclose a transcript relating to a grand jury proceeding; (3) the state violated petitioner's right to confront witnesses against him when DNA experts testified about work done by another scientist; (4) counsel who had not entered an appearance on petitioner's behalf provided ineffective assistance by not appearing at petitioner's sentencing hearing; and (5) counsel on direct appeal was ineffective for not filing a PLA. ECF No. 19, Ex. H. The court found that Cocroft had waived arguments (1) – (4) by not raising them on appeal, but went on to address the merits of all his claims. ECF No. 19, Ex. N at C00039. The court concluded, in the alternative, that even absent Cocroft's waivers, all of his claims failed on their merits. *Id.* at 42.

Cocroft appealed the denial of his post-conviction petition. But his court-appointed attorney determined that Cocroft's arguments were without merit and moved to withdraw as directed by *Pennsylvania v. Finley*, 481 U.S. 551 (1987). ECF No. 19, Ex. F. Cocroft's appointed counsel noted that his first four claims were waived because they could have been raised on direct appeal and were not, and that his final claim was meritless because a convict had no right

to counsel to assist in preparing a PLA. *Id.* On December 28, 2012, the appellate court issued a judgment order granting counsel's motion to withdraw and affirming the denial of the post-conviction petition. ECF No. 19, Ex. E.

Cocroft then filed a "Late Pro Se Petition for Leave to Appeal," raising the same five arguments. ECF No. 19, Ex. H. The Illinois Supreme Court granted the motion for leave to file the late PLA, but denied the petition itself on January 29, 2014. ECF No. 19, Ex. I. Cocroft did not petition for a writ of certiorari from the United States Supreme Court. He timely filed the present habeas corpus petition on April 4, 2014.[2]

## ANALYSIS

Cocroft's pro se § 2254 petition raises the same five claims he raised in his post-conviction petition: (1) the trial court violated his right to hire further counsel of his choice; (2) the state failed to disclose testimony from grand jury transcripts; (3) the state violated petitioner's right to confront witnesses against him when DNA experts testified about the actions of another scientist; (4) counsel who had not entered an appearance on petitioner's behalf provided ineffective assistance by not appearing at petitioner's sentencing hearing; (5) and

---

[2] Cocroft's petition is timely because the one-year statute of limitation on habeas petitions is tolled during the pendency of his post-conviction petition and appeals. 28 U.S.C. § 2244(d)(2). Proceedings on the post-conviction petition ran from the filing of that petition on July 22, 2011, through denial of the PLA by the Illinois Supreme Court on January 29, 2014. Cocroft's conviction became final, for purposes of the habeas limitations period, on July 22, 2011 (35 days after the Illinois Appellate Court affirmed his conviction, at which time Cocroft's right to seek review of the conviction in the Illinois Supreme Court expired). *See Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires."); *Bolton v. Akpore*, 730 F.3d 685, 695 (7th Cir. 2013) (because petitioner "did not move for leave to appeal to the Illinois Supreme Court in his direct appeal, he may not rely on his direct appeal to satisfy the exhaustion requirement"); Illinois Supreme Court Rule 315(b). Thus, the only periods chargeable against the one-year limitations period is the period from July 23, 2011 through December 14, 2011 (145 days) and from January 30, 2014 through April 3, 2014 (64 days). Those periods comprise 209 days, well less than a year.

counsel on direct appeal was deficient for failing to file a PLA. Although a court must construe a pro se petition liberally, *see Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010), the Court cannot consider the majority of Cocroft's claims in his petition because they were resolved on the adequate and independent state law ground of waiver, and thus are procedurally defaulted. As to the only claim that was not procedurally defaulted—claim five—Cocroft had no constitutional right to counsel in pursuing his PLA, thus he fails to present a cognizable habeas claim.

I. **Procedural Default: Claims (1)-(4)**

As he did in his state post-conviction proceeding, Cocroft raises claims that he did not argue in his direct appeal. Specifically, Cocroft maintains that the trial court violated his right to hire further counsel of his choice; the state failed to disclose testimony from grand jury transcripts; the state violated petitioner's right to confront witnesses against him when two experts testified about the actions of another scientist; and counsel who had not entered an appearance on petitioner's behalf provided ineffective assistance by not appearing at petitioner's sentencing hearing. The state post-conviction court found that all these arguments had been waived but—in an alternative holding—also dismissed each claim on its merits.

Before seeking habeas relief, a petitioner must fairly present his federal claims at every available level of the state's courts for review. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (exhaustion doctrine requires that state be provided with "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary appeal to the state Supreme Court). Further, the petitioner must not only present his arguments to the state courts but also alert them, at least in general terms, that there is a federal constitutional basis for the arguments. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If state courts are to be given the opportunity to

correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). The "natural corollary of this requirement is that when a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwarts*, 589 F.3d 368, 373 (7th Cir. 2009) (citing *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir 2004)). Thus, when reviewing a petition for a writ of habeas corpus, a federal court will not review a question of federal law if the state decision rested on an adequate and independent state ground for dismissal, which includes a finding that the petitioner failed to comply with a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This is because "[a]ny such ruling on the federal claims would be advisory, given the fact that on remand the state court would still deny petitioner relief on the independent and adequate state law ground." *Woods*, 589 F.3d at 373 (citing *Coleman*, 501 U.S. at 729).

Generally speaking, a "finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground" because such a finding indicates the petitioner failed to comply with a state procedural rule. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). In determining whether a claim has in fact been waived and thus procedurally defaulted, state law controls. *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000). In Illinois, where Cocroft was tried and convicted, if a defendant does not raise an issue on direct appeal, he cannot subsequently raise those issues in a post-conviction proceeding. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995) (holding that petitioner's failure to raise ineffective assistance of counsel claim, under Illinois law, resulted in waiver and claim was thus procedurally defaulted). This is because the Illinois Post-Conviction Hearing Act permits a defendant to mount a collateral attack on his conviction or sentence based on his constitutional

rights, but the scope of that review is limited to issues that were raised on direct appeal. *Wright v. Walls*, 288 F.3d 937, 947 (7th Cir. 2002) (citing *Coleman*, 168 Ill. 2d at 522); *Wright v. Cowan*, 149 F. Supp. 2d 523, 533 (C.D. Ill. 2001) *aff'd sub nom. Wright v. Walls*, 288 F.3d 937 (7th Cir. 2002) (court noting that if Illinois court declined to rule on a constitutional claim because the petitioner failed to present it properly, the court may not review the merits of the issue); *United States ex rel. Burton v. Mote*, No. 01-9744C, 2003 WL 23019174, at *4 (N.D. Ill. Dec. 23, 2003) (citing *Coleman*, 168 Ill. 2d at 522) (court finding that petitioner had waived his habeas claims by failing to raise them on direct appeal). Thus, if a review of the record indicates that the post-conviction appellate court disposed of Cocroft's claims on the ground of waiver then his claims are procedurally defaulted.

Here, that is exactly the case. With respect to claims one through four, the appellate court presiding over Cocroft's post-conviction proceedings explicitly indicated "because petitioner failed to raise these issues on direct appeal, they are now barred by the doctrine of waiver."[3] ECF No. 18, Ex. N. at 41. A review of the brief filed by Cocroft in his direct appeal to the Illinois Appellate Court supports this finding as well. There Cocroft presented the following issues for review: (1) that the government failed to prove beyond a reasonable doubt digital penetration; (2) that the trial court failed to make an inquiry into his pro se claim that his trial lawyer provided

---

[3] In addition to finding that Cocroft's claims were waived, the state court went on to address the merits of his petition. The court then held that "even if these claims were not waived, they still fail on their merits." Exh. N at 42. But this alternative holding does not alter the procedural default analysis with respect to Cocroft's claim because default should be enforced if the state court relied on an adequate and independent state law ground, such as waiver, to deny the claim. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding…the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment"); *Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002) (holding that even though the state appellate court addressed the petitioner's claims on the merits, that was merely an alternative holding to the court's finding that petitioner had waived those same claims).

11

ineffective assistance of counsel; and (3) the trial court abused its discretion in denying his request for a continuance after he elected to proceed pro se on the eve of trial. None of these claims relate to the claims presented in Cocroft's habeas petition.[4]

Nevertheless, a finding of procedural default can be overcome if the petitioner can establish that (1) good cause exits for the default and actual prejudice was suffered as a result, or (2) a finding of default would lead to a "fundamental miscarriage of justice."[5] *See Morales v. Johnson*, 659 F.3d 588, 604 (7th Cir. 2011). In his pro se motion for habeas relief, Cocroft does not argue against procedural default nor does he maintain that a fundamental miscarriage of justice would occur if the Court declined to address the merits of his petition. But even if he had, he would be unable to overcome a finding of procedural default. Before an ineffective assistance of counsel claim can be used to overcome a finding of default on another federal claim, the argument must be presented to state courts as an independent claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). In *Edwards*, after unsuccessfully pursuing state post-conviction relief for his aggravated-murder conviction, the petitioner filed a habeas petition in federal court alleging

---

[4] The claim of ineffective assistance that Cocroft raised on direct appeal was based on a different factual predicate than the ineffective assistance claim asserted in his post-conviction petition. Cocroft's direct-appeal claim maintained that his trial attorney was not communicating with him and had failed to review discovery. His post-conviction petition claim, by contrast, was that his appointed counsel was constitutionally deficient for failing to file a PLA. But here the ineffective assistance claim that Cocroft advances argues that a different attorney abandoned him at sentencing. Given that these two claims involve a completely different set of operative facts, Cocroft's current ineffective assistance of counsel claim has not been properly presented for state-court review, and was thus forfeited. In order for a federal claim to be "fairly presented," and thus not waived, an inmate must present to the state judiciary "both the operative facts and the legal principles that control each claim." *Wilson v. Briley*, 243. F.3d 325, 327 (7th Cir. 2001).

[5] The fundamental miscarriage of justice exception requires a showing of "actual innocence." *House v. Bell*, 547 U.S. 518, 537 (2006). Such a showing must be supported by new and reliable evidence, whether it be exculpatory scientific, a trustworthy eyewitness, or critical physical evidence. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Here, Cocroft makes no showing that such evidence exists and the record is devoid of any fact indicating that it otherwise does.

that there was cause for excusing the procedural default of his claims because his appellate counsel was constitutionally deficient for failing to raise his federal claims on direct appeal. *Id.* at 449. But in finding his ineffective assistance of counsel argument itself was procedurally defaulted because it too was not raised before a state court, the Court noted that allowing habeas petitioners to raise ineffective assistance of counsel claims—even when collaterally attacking the procedural default of another claim—for the first time on habeas review would the make "exhaustion requirement illusory." *Id.* at 452. Finding otherwise would enable habeas petitioners to raise federal claims relating to state court proceedings without respecting the "'States' interest in correcting their own mistakes…in all federal habeas cases.'" *Id.* at 453 (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). It follows that because Cocroft's post-conviction petition is devoid of any reference that his counsel for his direct appeal was constitutionally deficient for failing to raise his current claims, that argument too is procedurally defaulted and cannot excuse the default of his current claims.[6]

## II. Count 5 is Not Cognizable

Count 5 of Cocroft's habeas petition alleges that his state appointed direct appeal counsel was ineffective because they did not file a petition for leave to file an appeal with the Illinois Supreme Court. The right to competent appellate counsel is firmly established. *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). But as Pfister notes, a criminal defendant's "right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, there can be no habeas relief for a claim that counsel on

---

[6] Cocroft cannot excuse his failure to raise the ineffective assistance of his direct-appeal counsel on a claim of ineffective assistance of his post-conviction counsel. 28 U.S.C. § 2254(i); *Szabo v. Walls,* 313 F.3d 392, 397 (7th Cir. 2002) ("[I]neffective assistance of post-conviction counsel does not supply 'cause' for the cause-and-prejudice formula under which federal courts sometimes entertain claims that were not properly presented to the state courts.").

discretionary appeals—such as on appeal to the Supreme Court of Illinois—was ineffective. *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2001); 28 U.S.C. § 2254(a) (habeas relief is warranted "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.").

But Cocroft maintains that it was not his discretionary appeal counsel's obligation to file the PLA (because he in fact never retained counsel himself), but it instead was the obligation of his court appointed direct appeal counsel to do so. That is not the case. As the state appellate court in Cocroft's post-conviction proceeding noted, "[Cocroft] is not entitled, as a matter of right, to file a petition for leave to appeal with the Illinois Supreme Court." This is of course because a criminal defendant's "right to appointed counsel extends to the first appeal of right, and ***no further***…[and] a defendant has no federal constitutional right when pursuing a discretionary appeal on direct review of his conviction." *Finley*, 481 U.S. at 555 (emphasis added). Generally, a PLA can only be filed after a final judgment in the first appeal has been entered. IL. S. CT. Rule 315 (b). Thus, because Cocroft's constitutional right to counsel would have terminated at that point—and his counsel's obligations pursuant to his appointment—it would have been the responsibility of the counsel representing him on appeal before the Illinois Supreme Court to file a PLA. Accordingly, Cocroft's claim that his appellant counsel was constitutionally deficient presents no viable constitutional claim; making federal habeas relief unavailable.

### III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, this Court "must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant." Accordingly, the Court must determine whether to grant Cocroft a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition. Instead, he must first request a certificate of appealability. *See Miller—El v. Cockrell*, 537 U.S. 322, 335 (2003). A certificate should only issue when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to satisfy this standard, "[a] prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). And in cases where a district court denies a habeas claim on procedural grounds—which this Court had done for the majority of Cocroft's claims—the certificate should only issue if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 485 (2003).

Here, with respect to counts 1 - 4, reasonable jurists could only conclude that Cocroft's claims were procedurally defaulted. It is readily apparent that Cocroft failed to raise these claims in state court, and it is equally apparent that nothing in his motion or the record excuses that default. And it is will established that a defendant has not right to counsel when pursuing a discretionary appeal, thus count 5 is not cognizable. Accordingly, the Court declines to certify any issues for appeal.

## IV. Motion for Discovery

There is one final issue that needs resolution. Cocroft filed a motion for leave to seek discovery he claims is necessary for his petition. *See* Pro Se Petitioner's Motion for Leave to

15

Make Necessary Discovery, ECF No. 25. Cocroft requested that the state produce grand jury transcripts that contain testimony of "his accuser." *Id.* He argues that this discovery is necessary to support his claim of a purported *Brady* violation. But that discovery would go to the merits of Cocroft's claim and the Court has already concluded that it cannot consider that claim due to procedural default. Accordingly, Cocroft's discovery motion is denied.

\*\*\*

For the reasons discussed above, Cocroft's petition for a writ of habeas corpus is denied and the Court declines to issue a certificate of appealability. Cocroft's motion for leave to make necessary discovery is also denied.

Date: March 9, 2016

John J. Tharp, Jr.
United States District Judge